JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FOX, et al.,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>THE HOME DEPOT, INC., et al.,<br><br>　　　　　　　　Defendants. | Case No. 8:20-cv-02127-FLA (DFMx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. 53]**<br><br>Date:　　　　July 28, 2023<br>Time:　　　　11:00 a.m.<br>Courtroom:　6B |

**RULING**

Before the court is Defendants Home Depot, Inc. ("Home Depot") and Graco Inc.'s ("Graco") (collectively, "Defendants") Motion for Summary Judgment ("Motion"). Dkt. 53 ("Mot."); Dkt. 54 ("Mot. Br."). Plaintiff Michael Fox ("Plaintiff") opposes the Motion. Dkt. 63 ("Opp'n"). The Motion came to hearing on July 28, 2023. Dkt. 128.

For the reasons stated herein, the court GRANTS Defendants' Motion in its entirety and ENTERS summary judgment in Defendants' favor. Defendants shall file a proposed Judgment within 14 days of this Order.

/ / /

# BACKGROUND

The following facts are not disputed reasonably by the parties. Plaintiff is a licensed interior designer and has worked as an interior designer for over 20 years. Dkt. 1-1 ("Compl") ¶ 7; Dkt. 55-1 at 7[1] (Pl. Dep. at 20:2–24). On October 30, 2019, Plaintiff purchased a Graco Magnum X5 paint sprayer (the "Sprayer") and a gallon of Klean Strip Lacquer Thinner from Home Depot. Dkt. 55 (Def. State. of Uncontroverted Facts, "DSUF") ¶¶ 22–23.

On December 11, 2019, Plaintiff began work on a window seat project at the home of non-parties Joshua and Paige Harper (the "Harper Project"), in which he used the Sprayer. *See, e.g., id.* ¶¶ 58, 62, 80–82, 119. Plaintiff created the paint he intended to use in the Sprayer by mixing one quart of Klean-Strip Lacquer Thinner into approximately one gallon of Luster Lac lacquer paint. *Id.* ¶ 82. Plaintiff flushed the Sprayer using Klean-Strip Lacquer Thinner before he added the paint mixture and began to "prime" the Sprayer by turning "the power off and on, prime back off and on." *Id.* ¶¶ 82, 119. Plaintiff testified at deposition that the Sprayer "sparked" while he was trying to prime it, and caught on fire. Dkt. 55-1 at 23–24 (Pl. Dep. at 85:7–89:13), 25 (Pl. Dep. at 90:11–17); DSUF ¶¶ 123–24; Dkt. 65 (Pl. State. of Genuine Disputes, "PSGDF") ¶¶ 123–24. Plaintiff alleges he suffered serious burns to his right hand, wrist, and forearm from the fire. Compl. ¶ 9.

On February 14, 2020, Plaintiff attempted to return the damaged Sprayer to a Home Depot store for a refund, which Home Depot refused after Plaintiff stated he had a lawyer and intended to bring a lawsuit. DSUF ¶ 127. Plaintiff also opened a claim with Home Depot regarding the incident. PSGDF ¶ 127. The next day, on February 15, 2020, Plaintiff went to a second Home Depot store and successfully returned the damaged Sprayer. DSUF ¶ 128.

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System rather than any page numbers listed natively.

Plaintiff filed the Complaint in Orange County Superior Court on September 17, 2020, asserting three causes of action for: (1) strict product liability; (2) negligence; and (3) breach of warranty. Compl. Defendant Graco removed the action to this court on November 4, 2020. Dkt. 1.

The first cause of action for strict product liability alleges, on information and belief, that "the Sprayer that was manufactured and sold by Graco was defective as to design, manufacture, and warnings, causing the Sprayer to have a dangerous and defective condition that made it unsafe for its intended use." Compl. ¶ 14. Plaintiff further claims the Sprayer contained the manufacturing defect alleged when Graco shipped it to Home Depot and it was sold to Plaintiff. *Id.* ¶¶ 14–15. During the parties' meet and confer conference and the hearing for the Motion, Plaintiff confirmed he was not pursuing a design defect claim. *See* Mot. at 2; Mot. Br. at 12. The second cause of action for negligence alleges, on information and belief, that Graco "so negligently and carelessly designed, manufactured, constructed, assembled, inspected, and sold the Sprayer," and that Home Depot "so negligently and carelessly inspected, maintained, and sold the Sprayer, that it was dangerous and unsafe for its intended uses." *Id.* ¶¶ 21–22. The third cause of action alleges Defendants breached the implied warranty of merchantability because the Sprayer was not of the same quality as those generally acceptable in the industry and not fit for the ordinary purpose for which it was intended. *Id.* ¶¶ 29, 31.

## DISCUSSION

### I.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying specifically the portions of materials in the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A). If the moving party meets its initial burden, the opposing party must then set forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Inferences may be drawn from underlying facts that are either not in dispute or that may be resolved at trial in favor of the nonmoving party, but only if they are "rational" or "reasonable" and otherwise permissible under the governing substantive law. *Id.* The court must view all evidence and justifiable inferences "in the light most favorable to the nonmoving party." *Id.* at 630–31. However, a party cannot defeat summary judgment based solely on the allegations or denials of the pleadings, conclusory statements, or unsupported conjecture. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any

supporting evidence, is insufficient to create a genuine issue of material fact."). "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).

## II. Plaintiff's Arguments Regarding Spoliation

As an initial matter, Plaintiff contends Defendants committed spoliation by misplacing and losing the Sprayer after he returned it to Home Depot for a refund. Opp'n at 24–28. Plaintiff argues "the Sprayer was critical evidence relating to Plaintiff's manufacturing defect claims," without which "Plaintiff's evidentiary burden has become hard to satisfy as the very thing to study has disappeared," and requests the court grant an adverse inference against Defendants that the Sprayer contained evidence favorable to his claims. *Id.* at 25–26.

"Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (quotation marks omitted). A trial court's authority to impose sanctions for spoliation arises from its inherent power to control the judicial process. *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 824 (9th Cir. 2002). The majority of courts require a party seeking an adverse inference or other sanction based on the alleged spoliation of evidence to establish the following three elements: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012). "When relevant evidence is lost accidentally or for an innocent reason, an adverse evidentiary

inference from the loss may be rejected." *Med. Lab'y*, 306 F.3d at 824.[2]

      Plaintiff contends Joyce Bowers ("Bowers"), a senior litigation paralegal in Graco's legal department, instructed him to return the Sprayer to Home Depot so it could be inspected by Graco. PSGDF ¶ 149; Dkt. 55-1 at 30 (Pl. Dep. at 113:2–17). Plaintiff did not state when this conversation allegedly occurred, and he admitted at deposition and at the hearing that he does not have any evidence to corroborate his assertion. *See* Dkt. 55-1 at 30 (Pl. Dep. at 113:14–114:2). Graco denies it instructed Plaintiff to return the Sprayer to Home Depot and states it did not become aware of the incident and Plaintiff's injuries until after he returned the Sprayer on February 15, 2020. Dkt. 73 ("Reply") at 19 n. 1; Dkt. 75 (Def. Resp. to PSGDF) ¶ 149. According to Defendants, Graco first received notice of the incident and Plaintiff's injuries when Bowers received a letter from Graco's outside counsel, dated February 17, 2020, which was after Plaintiff returned the Sprayer to Home Depot. Dkt. 76-3 (letter from Bowers to Plaintiff, dated July 2, 2020) at 2. Bowers further stated that Plaintiff did not contact Graco until mid-March 2020, at which time she explained "Graco's need to inspect the equipment allegedly involved in the incident." *Id*. Plaintiff did not provide evidence to dispute Defendants' timeline of events or corroborate his assertion that he spoke to Bowers before returning the Sprayer. Tellingly, Plaintiff did not mention Bowers or state Graco instructed him to return the Sprayer to Home Depot in his signed declaration. *See* Dkt. 66 (Pl. Decl.). Plaintiff, thus, fails to

---

[2] Plaintiff cites *Bravo v. Foremost Insurance Group*, Case No. 5:94-cv-20467-RPA, 1994 WL 570643, at *4 (N.D. Cal. Oct. 11, 1994), to argue spoliation "exists when (1) pending or probable litigation involving the plaintiff; (2) knowledge by the defendant of the existence or likelihood of litigation; (3) negligent acts of spoliation; (4) disruption of the plaintiff's case; and (5) damages." Opp'n at 24 (errors in Opposition). In *Bravo*, 1994 WL 570643, at *4, the district court stated the elements for a tort claim of negligent spoliation brought by a plaintiff against his former attorney. *Bravo* neither discussed nor considered the standard applied by courts in determining whether to sanction an opposing party for spoliation and is inapposite to the subject action.

6

1 establish he acted at Graco's instructions, as he contends.

2 It is undisputed Home Depot refused Plaintiff's first attempt to return the Sprayer after he stated he had a lawyer and intended to bring a lawsuit regarding the Sprayer. DSUF ¶ 127; PSGDF ¶ 127 ("Home Depot's manager told him to get the burned sprayer out of the store."). Home Depot's records of the claim Plaintiff opened on February 14, 2020, note: "Michael Fox stated 'my attorney said this is a $200k-$300k lawsuit but it will take 2 years I don't have time I want my money back.'" Dkt. 76-7 at 8 (grammatical errors in original). Kaitlyn Parrish ("Parrish"), the Home Depot employee who processed the return at the second Home Depot store, testified Plaintiff "mentioned that he was going to file a lawsuit or was in the middle of a lawsuit. But he just wanted his money back, and he was over it." Dkt. 76-5 at 6 (Parrish Dep. at 8:18–23). Parrish also testified Plaintiff did not "say anything to [her] at all about … his goal or desire to have the sprayer preserved so it could get back to Graco[.]" *Id.* at 7 (Parrish Dep. at 9:1–6). At the hearing, Plaintiff admitted there was no record he told the employee at the second Home Depot store he intended to bring a lawsuit or that the Sprayer should be preserved as evidence and/or returned to Graco for inspection.

Based on the evidence presented, the court finds Plaintiff is not entitled to an adverse inference. It is undisputed Plaintiff was represented by counsel at the time he returned the Sprayer to Home Depot. As Plaintiff had initial control of the Sprayer, he had a duty to preserve the Sprayer as evidence if he intended to proceed with litigation. *See A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 193–94 (C.D. Cal. 2006) ("a litigant has a duty to preserve evidence it knows or should know is relevant to imminent litigation"). The first store's refusal to accept the return once he mentioned his intent to bring a lawsuit, at minimum, placed Plaintiff on notice he could not simply return the Sprayer to a different Home Depot store for a refund if he wanted to proceed with litigation, and should speak to his attorney about how to proceed. The undisputed contemporary records establish clearly that Plaintiff

7

1  prioritized obtaining a refund over his anticipated litigation.  *See* Dkt. 76-7 at 8; Dkt.
2  76-5 at 6 (Parrish Dep. at 8:18–23).  Accordingly, the court finds the Sprayer was lost
3  due to Plaintiff's conduct, rather than any wrongdoing by Defendants.

4        Even if the court were to assume arguendo that Graco had instructed Plaintiff to
5  return the Sprayer to Home Depot as he contends, there is no evidence Defendants lost
6  or misplaced the Sprayer with a culpable state of mind.  Accordingly, any loss or
7  destruction of evidence by Home Depot would have been innocent and accidental at
8  worst, which is insufficient to warrant an adverse inference.  *See Med. Lab'y*, 306
9  F.3d at 824.

10        In sum, Plaintiff fails to establish Defendants engaged in any conduct
11  warranting any sanctions, let alone an adverse inference regarding the Sprayer.  The
12  court, therefore, DENIES Plaintiff's request for an adverse inference.

13  **III.   Analysis**
14        **A.   Plaintiff's Manufacturing Defect Claims**
15        "A manufacturing defect occurs when an item is manufactured in a substandard
16  condition."  *Gonzalez v. Autoliv ASP, Inc.*, 154 Cal. App. 4th 780, 792 (2007).  "In
17  general, a manufacturing or production defect is readily identifiable because a
18  defective product is one that differs from the manufacturer's intended result or from
19  other ostensibly identical units of the same product line."  *Barker v. Lull Eng'g Co.*,
20  20 Cal. 3d 413, 429 (1978).  Claims based on a manufacturing defect "presuppose that
21  a suitable design is in place, but that the manufacturing process has in some way
22  deviated from that design."  *In re Coordinated Latex Glove Litig.*, 99 Cal. App. 4th
23  594, 613 (2002).  A manufacturing defect "must be affirmatively established, and an
24  inference of defect as a result of the accident is not to be drawn."  *Barrett v. Atlas
25  Powder Co.*, 86 Cal. App. 3d 560, 565 (1978) (citing *Henderson v. Harnischfeger
26  Corp.*, 12 Cal. 3d 663 (1974)).

27        "A manufacturer or retailer may be held strictly liable for placing a defective
28  product on the market if the plaintiff's injury results from a reasonably foreseeable use

1  of the product." *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1302 (2012).  The
2  elements of a strict liability claim based on a manufacturing defect are: (1) a defect in
3  the manufacture of the product; (2) causation; and (3) injury.  *County of Santa Clara*
4  *v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 318 (2006) (citing *Soule v. Gen. Motors*
5  *Corp.*, 8 Cal. 4th 548, 560 (1994)).  To prevail under a negligence theory, "a plaintiff
6  must also prove an additional element, namely, that the defect in the product was due
7  to negligence of the defendant." *Gonzalez*, 154 Cal. App. 4th at 793 (quotation marks
8  omitted).

9        Defendants move for summary judgment as to Plaintiff's manufacturing defect
10 claims on the grounds that Plaintiff has not provided and cannot provide admissible
11 evidence of a manufacturing defect.  Mot. Br. at 24–28.  Defendants note Plaintiff's
12 sole expert, Dr. Jahan Rasty ("Rasty"), did not state affirmatively that the Sprayer had
13 a manufacturing defect and speculated only that there "could have" been a loose wire
14 or other unidentified malfunction.  *Id.* at 26 (citing Dkt. 55-1 at 178–202 (Rasty
15 Expert Report)).  Plaintiff admits "the Sprayer was critical evidence relating to
16 Plaintiff's manufacturing defect claims," and that "[t]he failure to preserve the Subject
17 Sprayer precludes Plaintiff from definitively proving his manufacturing defect
18 claims."  Opp'n at 25–26; *see also* Dkt. 55-1 (Rasty Expert Report) at 90 (recognizing
19 Plaintiff lacks "any evidence as to what exactly caused [the Sprayer] to spark,
20 explode, and catch fire").  Nevertheless, Plaintiff argues he can establish these claims
21 if granted the adverse inference requested.  *Id.* at 26–28 (arguing an adverse inference
22 is necessary to establish his claims).

23       Having denied Plaintiff's request for an adverse inference, the court finds
24 Plaintiff cannot meet his initial burden to establish affirmatively the existence of a
25 manufacturing defect in the Sprayer.  *See Barrett*, 86 Cal. App. 3d at 565.  The court,
26 therefore, GRANTS Defendants' Motion and summary judgment in Defendants' favor
27 as to Plaintiff's manufacturing defect claims.
28 / / /

9

### B. Plaintiff's Warning Defect Claims

The first cause of action alleges, on information and belief, that "the Sprayer … was defective as to … warnings, causing the Sprayer to have a dangerous and defective condition that made it unsafe for its intended use." Compl. ¶¶ 14–15. "Generally speaking, manufacturers have a duty to warn consumers about the hazards inherent in their products." *Webb v. Special Elec. Co.*, 63 Cal. 4th 167, 181 (2016) (quotation marks omitted). "A warning informs consumers about hazards of which they are unaware, so that they can avoid the product or minimize its danger by careful use." *Id.* "The duty to warn applies to all entities in a product's chain of distribution." *Id.* "In general, a product seller will be strictly liable for failure to warn if a warning was feasible and the absence of a warning caused the plaintiff's injury." *Id.* (italics omitted). "Reasonableness of the seller's failure to warn is immaterial in the strict liability context." *Id.*

The elements of a strict liability claim for defective warnings are: (1) a failure to warn; (2) causation; and (3) injury. *Santa Clara*, 137 Cal. App. 4th at 318. "Under California law, a manufacturer can be held strictly liable for failing to warn a product's foreseeable user about that product's risks, even if those risks come from a foreseeable *misuse* of the product." *Torres v. Taser Int'l, Inc.*, 277 Fed. App'x 684, 687 (9th Cir. 2008) (emphasis in original). "However, liability for failure to warn does not attach if the dangerous propensity is either obvious or *known to the injured person* at the time he uses the product." *Id.* (quotation marks and brackets omitted, emphasis in original); *see also Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 67 (2008) ("California law … recognizes the obvious danger rule, which provides that there is no need to warn of known risks under either a negligence or strict liability theory."). The sophisticated user defense recognizes that, "[j]ust as a manufacturer need not warn ordinary consumers about generally known dangers, a manufacturer need not warn members of a trade or profession (sophisticated users) about dangers generally known to that trade or profession." *Johnson*, 43 Cal. 4th at 67.

Defendants move for summary judgment on Plaintiff's defective warning claim on the grounds that: (1) Plaintiff cannot prove causation because the danger at issue was either obvious or known to Plaintiff when he used the Sprayer; and (2) Defendants were not required to provide Plaintiff with a warning under the sophisticated user doctrine. Mot. Br. at 14–19. According to Defendants, Plaintiff's defective warning claim fails because Plaintiff knew of the risks associated with the Sprayer, including that it could catch on fire if used with highly flammable, acetone-based products such as the Luster Lac lacquer paint and Klean-Strip Lacquer Thinner. Mot. Br. at 17. Plaintiff responds that the sophisticated user doctrine does not apply because he does not qualify as a sophisticated user. Opp'n at 10–15. Based on the undisputed evidence presented, the court agrees with Defendants that Plaintiff had actual knowledge of the dangers that form the basis for his claims.

Plaintiff testified at deposition that: (1) he received occupational training about the use of paint sprayers, which included the use of lacquer coatings, oil-based coatings, and spray equipment (DSUF ¶ 4); (2) he had used Graco paint sprayers since approximately 1991, owned six or seven Graco paint sprayers, and was "very familiar" with their use (DSUF ¶¶ 12–14, 16); and (3) he read the owner's manual for the Sprayer and the warning label on the Sprayer before using the Sprayer for the Harper Project (DSUF ¶¶ 30–31; Dkt. 55-1 at 20 (Pl. Dep. at 70:13–71:12)).

The third page of the owner's manual for the Sprayer warns specifically:

> Please read the information on the material container label to determine if it can be used with your sprayer. Ask for a Safety Data Sheet (SDS) from your supplier. The container label and SDS will explain the contents of the material and the specific precautions related to it.
>
> Paints, coatings and clean-up materials generally fit into one of the following **3 basic categories:** …
>
>  **FLAMMABLE**: This type of material contains flammable solvents such as xylene, toluene, naphtha, MEK, <u>lacquer thinner, acetone</u>, denatured alcohol, and turpentine. The

11

> container label should indicate that this material is <u>FLAMMABLE.  This type of material is **NOT** compatible with your sprayer and **CANNOT** be used.</u>

> **WARNING**
> **FIRE AND EXPLOSION HAZARD**
> - Use only non-flammable or water-based materials, or non-flammable paint thinners. Do not use materials having flash points lower than 100° F (38° C). This includes, but is not limited to, acetone, xylene, toluene, or naphtha. For more information about your material, request Safety Data Sheet (SDS) from the supplier.
> - Spraying flammable or combustible (oil-based) materials in a factory or fixed location must comply with NFPA 33 and OSHA 1910.94(c) requirements in the USA and with all similar local regulations in other countries.

Dkt. 55-1 at 90 (underline added).  Plaintiff testified at deposition that "[he had] seen these warnings for all of the years that [he had] worked on all of the sprayers," and "[k]new what everything meant inside of them[.]"  Dkt. 55-1 at 20 (Pl. Dep. at 71:7–12).  Plaintiff also testified that he did not find the warnings or anything else stated in the operator's manual confusing.  *Id.* (Pl. Dep. at 72:9–20).

The label for the Luster Laq lacquer paint states: "DANGER [¶] Highly flammable liquid and vapor," next to pictograms for fire and danger.  *Id.* at 137.  Although Plaintiff testified he had "probably not" read this label, he explained it was because of how often he had used the product in the past.  *Id.* at 20 (Pl. Dep. at 71:13–16).  The Safety Data Sheet ("SDS") for the Luster Laq lacquer paint states the product contains 48–59% acetone, and includes pictograms for fire and danger along with the hazard statement: "Highly flammable liquid and vapour."  *Id.* at 139–40.  According to Plaintiff, he read this SDS previously, understood the contents, and did not find anything contained therein to be confusing.  *Id.* (Pl. Dep. at 71:22–72:8).

Plaintiff additionally testified he experienced "almost the exact same thing" as the fire here, previously, when a similar sprayer also "caught on fire" while he was

spraying lacquer. *Id.* at 18 (Pl. Dep. at 64:2–64:14) ("Q. Had you, before the Harper job, ever had any problems with a Graco sprayer that caused you concern about safety? A. Yes. Q. What problems had you had? A. … I'm not sure if it was a Graco or the SprayTech -- I had one catch on fire also. Q. What happened there? A. Almost the exact same thing as the fire with the Graco. Q. Were you spraying lacquer? A. Yes."). As Plaintiff explained, the prior fire occurred while he was performing "almost the same procedure" that he performed here.

> Q. And tell me what happened in 2002.
>
> A. Hesitating to start. And I did almost the same procedure. I would toggle -- play a little game where I toggle the prime and got it to go. And almost the same exact thing, it sparked, and it caught on fire. …

*Id.* (Pl. Dep. at 64:15–19).

Based on Plaintiff's testimony at deposition and the undisputed evidence in the record, the court finds the risk of fire was both obvious and known to Plaintiff when he engaged in the conduct he performed here. Not only did Plaintiff testify that he was "very familiar" with the Sprayer, the Luster Laq lacquer paint, and the warnings that accompanied both products, Plaintiff had personally experienced "almost the same exact" danger while performing "almost the same procedure" previously. *See id.* Defendants, thus, cannot be held liable for their alleged failure to warn Plaintiff of this known and obvious danger. *See Torres*, 277 Fed. App'x at 687.

In his Opposition, Plaintiff argues Defendants mischaracterize his deposition testimony and stresses he "merely *skimmed* the Subject Sprayer's manual for operational use," and did not review the warnings before beginning work. Opp'n at 8 (emphasis in Opposition), 15; *see also* Dkt. 66 (Pl. Decl.) ¶ 6 ("I did not read [the owner's manual] word for word and did not read the warnings; I skimmed through the Manual as I have used the X5 before and felt I knew how to operate it. I skimmed the Manual for operational use, not to read the specifics on alleged danger warnings…."). Plaintiff's argument does not save his defective warning claim. There is no dispute

13

Plaintiff was aware of the existence of the warnings in the owner's manual for the Sprayer, the label for the Luster Laq lacquer paint, and the related SDS. Thus, if Plaintiff did not read the warnings as he contends, this claim would fail because there could be no conceivable causal connection between the sufficiency of warnings he did not read and Plaintiff's injury. *See Ramirez v. Plough, Inc.*, 6 Cal. 4th 539, 556 (1993); *Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 112 (collecting cases recognizing there is no causation where plaintiff did not read the allegedly inadequate warnings).

In short, Plaintiff's defective warning claim fails because: (1) he either read and understood the warnings and knew from his prior experience that use of the Sprayer with lacquer paint in the manner in which they were used could result in a fire, as he testified at deposition; or (2) he did not read the warnings and their contents could not have causally been related to his injuries. The court, therefore, GRANTS the Motion and summary judgment in Defendants' favor as to Plaintiff's defective warning claim. Having granted the Motion on this basis, the court need not address the parties' remaining arguments, including with respect to the sophisticated user doctrine.

### C. Plaintiff's Third Cause of Action for Breach of Implied Warranty of Merchantability

The third cause of action alleges Defendants breached the implied warranty of merchantability because "[t]he Sprayer was not of the same quality as those generally acceptable in the industry and it was not fit for the ordinary purpose for which the Sprayer is used for, as the Sprayer malfunctioned when Plaintiff turned it on to use and the Sprayer sparked, causing the lacquer paint to ignite and burn Plaintiff's right hand, wrist and arm." Compl. ¶¶ 29, 31. Defendants move for summary judgment as to this claim, on the grounds that Graco disclaimed all implied warranties of merchantability in clear, conspicuous writing through the express warranty it provided with the Sprayer. Mot. Br. at 23–24. Plaintiff does not respond to this argument in his Opposition. *See* Opp'n at 22–23.

///

In California, the implied warranty of merchantability for non-consumer goods is set forth in California Uniform Commercial Code § 2314.[3] An express warranty "may limit or alter the measure of damages recoverable under [the California Uniform Commercial Code], as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." Cal. Com. Code § 2719(1)(a). " Resort to a remedy [provided in an express warranty] is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." *Id.* § 2719(1)(b). For an express warranty "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous[.]" *Id.* § 2316(2).

It is undisputed Plaintiff received Graco's standard warranty, which states in relevant part on the first page of the warranty:

> **THIS WARRANTY IS EXCLUSIVE, AND IS IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTY OF MERCHANTABILITY OR WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE.**
>
> Graco's sole obligation and buyer's sole remedy for any breach of warranty shall be as set forth above. The buyer agrees that no other remedy (including, but not limited to, incidental or consequential

---

[3] In his Opposition, Plaintiff argues he has stated a valid claim for breach of the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), Cal. Civ. Code § 1790, et seq. Opp'n at 22–23. Plaintiff did not identify the Song-Beverly Act as a basis for his implied warranty claim in the Complaint. *See* Compl. The implied warranty of merchantability under the Song-Beverly Act (Cal. Civ. Code § 1791.1) applies only to "consumer goods," which are defined in relevant part as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables" (*id.* § 1791(a)). Plaintiff does not present any evidence the Sprayer was "used, bought, or leased for use primarily for personal, family, or household purposes[.]" *See* Opp'n at 22–23. The undisputed evidence in the record establishes Plaintiff purchased the Sprayer for use in his interior decorating business. *See, e.g.*, Dkt. 75 (Def. Resp. to PSGDF) ¶¶ 1–4, 6, 12–16, 57–62. Plaintiff, thus, fails to establish the Song-Beverly Act applies here.

15

damages for lost profits, lost sales, injury to person or property, or any other incidental or consequential loss) shall be available.

DSUF ¶¶ 131–32; Dkt. 55-1 at 125 (emphasis in original).

The express warranty's disclaimer of the implied warranty of merchantability is clear, conspicuous, in writing, and mentions the implied warranty of merchantability expressly.  The court, therefore, finds Plaintiff's claim for breach of the implied warranty of merchantability fails as a matter of law, based on Graco's disclaimer.  *See* Cal. Com. Code §§ 2719(1), 2316(2); *see also Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (finding all implied warranties disclaimed by manufacturer's express warranty).

The court, therefore, GRANTS the Motion and ENTERS summary judgment in Defendants' favor as to the third cause of action.

## **CONCLUSION**

For the aforementioned reasons, the court GRANTS the Motion in its entirety and ENTERS summary judgment in Defendants' favor.  Defendants shall file a proposed Judgment within 14 days of this Order.

IT IS SO ORDERED.

Dated: March 27, 2024

                                     FERNANDO L. AENLLE-ROCHA
                                     United States District Judge